FILED

2012 Mar-27  PM 03:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| SIMON BRAXTON, III, | ) | |
| PLAINTIFF, | ) | |
| VS. | ) | 2:10-cv-2485-JHH |
| U.S. STEEL CORPORATION, | ) | |
| DEFENDANT. | ) | |

## MEMORANDUM OF DECISION

The court has before it the November 15, 2011 Motion (Doc. # 14) of Defendant U.S. Steel Corporation for summary judgment.  Pursuant to the court's November 16, 2011 order (Doc. #17), the Motion was deemed submitted, without oral argument, on December 20, 2011. After careful review of the briefs and admissible evidence, the court concludes that the Motion is due to be granted for the following reasons.

## I. Procedural History

Plaintiff Simon Braxton commenced this action on September 14, 2010 by filing a Complaint in this court alleging violations of Title VII of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e <u>et. seq</u>.  Plaintiff contends that Defendant's alleged conduct constitutes race discrimination in his termination.

(Compl. ¶¶ 2-19.)  Defendant's November 15, 2011 Motion (Doc. #14) for summary judgment asserts that Plaintiff has failed to make a prima facie case of race discrimination and, in the alternative, Plaintiff has failed to rebut Defendant's legitimate and nondiscriminatory reasons for the conduct at issue; therefore, Defendant argues that it is entitled to summary judgment.

Both parties have filed briefs and submitted evidence in support of their respective positions.  Defendant submitted evidence[1] (Doc. #16) in support of its own motion for summary judgment and filed a supporting brief (Doc. #15) on November 15, 2011.  On December 13, 2011, Plaintiff filed a brief (Doc. #20) and evidence[2] (Doc. #21) in opposition to Defendant's motion for summary judgment.  On December 20, 2011, Defendant filed a brief (Doc. #23) and evidence[3] (Doc. #24) in reply to Plaintiff's opposition to summary judgment.

## II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if

---

[1] Defendant submitted the following evidence in support of summary judgment: deposition of Simon Braxton, III; declaration of Jodi Watson; deposition of George Kuykendall; and deposition of Leonard Olvey

[2] Plaintiff submitted the following evidence in opposition: deposition of Simon Braxton; deposition of Leonard Olvey; affidavit of Jackie Gordon; deposition of Ralph Shaw; deposition of George Kuykendall; deposition of Doug Walker; Simon Braxton's Interrogatory Responses.

[3] Defendant submitted the following evidence in reply: December 20, 2011 declaration of Jodi Watson.  The court notes that Plaintiff did not object to this evidence submitted in reply.

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Chapman v. AI Transport, 229 F.3d 1012, 1023 (11th Cir. 2000)  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp., 477 U.S. at 323.  Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions of file, designate specific facts showing that there is a genuine issue for trial.  Id. at 324.

The substantive law will identify which facts are material and which are irrelevant. Chapman, 229 F.3d at 1023; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. Chapman, 229 F.3d at 1023; Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; Chapman, 229 F.3d at 1023.  If the evidence is

merely colorable, or is not significantly probative, summary judgment may be granted.  <u>Anderson</u>, 477 U.S. at 249.  The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial.  <u>See</u> <u>Fitzpatrick</u>, 2 F.3d at 1115-17 (citing <u>United States v. Four Parcels of Real Property</u>, 941 F.2d 1428 (11th Cir. 1991)(<u>en banc</u>).  If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial.  <u>Fitzpatrick</u>, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden

of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case.  <u>Fitzpatrick</u>, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts.  <u>Lewis v. Casey</u>, 518 U.S. 343, 358 (1996) (citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992)).

## III. Relevant Undisputed Facts[4]

Braxton, an African American, began working at U.S. Steel's Fairfield Plant

---

[4]   Facts are undisputed unless otherwise expressly noted.   If the facts are in dispute, they are stated in the manner most favorable to Plaintiff.  <u>See</u> <u>Fitzpatrick</u>, 20 F.3d at 1115.

as a utility worker in December 2003.  (Braxton Dep. at 33-34.)  After six months in the utility position, Braxton worked as a furnace operator and mixer operator until 2006.  (Id.)  In 2006, he became a hot metal crane operator,[5] and with the exception of approximately 30 days in 2007, he held that position until his termination in June 2008.  (Id. at 39-41.)  Braxton worked in an area of the Plant known as "QBOP" throughout his entire employment at U.S. Steel, except for the 30 day period in 2007. (Id.)

### A.  Discipline Record

Beginning in 2006, Braxton began to have disciplinary problems, including insubordination and violation of workplace rules.   (Id. at 169-170; Exh. to Watson Decl. at USS00096.)  Braxton was first disciplined on April 8, 2006 "for performing his job in an unsafe manner" and "damaging company property" after he dropped a transfer ladle due to an improper hoot up while he was operating the hot metal crane. (Braxton Dep. at 99-104; Exh. to Watson Decl. at USS00048 & USS00049.)  Braxton received a three-day suspension for each infraction.  (Id.)  Braxton never complained to anyone that he believed this discipline was because of his race.  (Braxton Dep. at 105.)  Braxton contends, however, that the accident was not his fault, but actually the

---

[5]   The crane operator job required Braxton to make lifts of ladles of metal and charge the furnace with the pot.  (Braxton Dep. at 38.)  The overhead crane was located about 30 feet above the shop floor on a rail.  (Id.)

fault of the mixer operator that day.  (Id. at 94-100.)

Five months later, on September 8, 2006, Braxton was again disciplined.  (Id. at 140.)  On that day, Braxton's supervisor, Roy Reed, asked him whether there were any transfer ladles that needed to be cleaned.  (Id.)  Braxton answered in the negative, but later that day Reed observed a ladle that had not been cleaned and asked Braxton about it. (Id.; Exh. to Watson Decl. at US00243.) According to Braxton, he told Reed that the ladle was his emergency ladle in case there was a burn-through and that he was following the Safe Job Procedures (SJP).   (Braxton Dep. at 140.)   Reed responded that he did not need an emergency ladle,

> [a]nd the confrontation started from there.  And he [Reed] got . . . loud and he said, You only have to do one thing, do what I tell you to do.  And I [Braxton] told him, I'm following the SJP.   And . . . he [Reed] got real argumentative and I [Braxton] exchanged words, got loud with him, and I [Braxton] walked out. And before I could walk out, he said, Hey come back.  I ain't through with you. And I said, Well I'm done.  And I walked toward the bathhouse and went home.

(Id.)  Because of this behavior, Reed called Plant Security to escort Braxton to the medical department for a drug and alcohol test to evaluate his fitness for duty.  (Id. at 146-47; Exh. to Watson Decl. at US00243.)  Braxton refused to submit to the test and was escorted out of the plant by Security.  (Id.)

As a result of this incident, Braxton was given a five- day suspension subject

to discharge of insubordination for failure "to stay in your supervisor's office as directed" and failure "to submit to a Fitness for Duty Evaluation." (Exhs. 3&4 to Braxton Dep.)  Following a hearing on September 9, 2006, Braxton's five day suspension subject to discharge was converted to a fifteen- day suspension. (Exh. 4 to Braxton Dep.)  Additionally, Braxton signed a Last Chance Agreement on September 21, 2006, acknowledging that he was being given a last chance by U.S. Steel to improve his conduct and performance and that any future rules infractions or disciplinary problem would result in his discharge. (Braxton Dep. at 144-46; Exh. 4 to Braxton Dep.)  Braxton complained to the Union that he did not agree with the discipline, but he did not complain that he was being discriminated against because of his race. (Braxton Dep. at 161-62.)

Over a year passed without any disciplinary issues for Braxton.  However, on December 16, 2007, an incident occurred which resulted in another suspension. On that day there was a problem with the rail system that feeds metal to one of the mixers in the area where Braxton was working.  (Id. at 150-51.)  Because of the problem, an extra crane operator  was needed to ensure the continued operation of the mixer, and the supervisor, Sam Montgomery, asked Braxton to stay at work past his regularly scheduled shift to help out.  (Id. at 151.)  Braxton stayed for forty-five minutes after his shift, but then went home without permission.  (Id.)

8

Because Braxton left, the QBOP operation had to be shut down. (Exh. to Watson Decl. at US00194.)

Braxton was given two five-day suspensions subject to discharge because of his actions. The first was for insubordination and the second was for violation of the Last Chance Agreement signed on September 21, 2006. (Braxton Dep. at 150; Exhs. 7 & 9 to Braxton Dep.; Olvey Dep. at 104.) The suspension was later converted to a discharge; however, the Union filed a grievance objecting to the discharge.[6] (Braxton Dep. at 155-56.) Shortly before the arbitration of the grievance in March 2008, the Union and U.S. Steel entered into a settlement whereby Braxton signed a second Last Chance Agreement and was allowed to return to work. (Braxton Dep. at 156; Exh. 8 to Braxton Dep.; Olvey Dep. at 113.) The March 14, 2008 Last Chance Agreement specifically addressed problems with Braxton's work performance and attitude. (Exh. 8 to Braxton Dep.) It stated as follows regarding U.S. Steel's expectations for Braxton to retain his employment:

> You should understand that your supervisor's directions/instructions are to be followed, even if you don't agree with them, absent any safety considerations. In the future, you shall follow all directions/instructions coming from any person in authority. Moreover, you are to perform all assignments in a satisfactory manner. Failure

---

[6] The grievance did not allege that he had been discriminated against on the basis of his race. (Braxton Dep. at 161.)

on your part to comply with directions/instructions or to perform an assignment in a satisfactory manner will amount to a material breach of this agreement and subject you to suspension preliminary to discharge.

(Id.)

## B. Termination

Three months after signing the Last Chance Agreement, on June 22, 2008, Braxton was working as a hot metal crane operator in the QBOP area. (Braxton Dep. at 166.) On that day, Montgomery was the temporary foreman and was supervising Braxton. (Id. at 133-34; Olvey Dep. at 42-46.) It was the first day that Braxton had worked with Montgomery since the incident in December 2007 when Braxton was disciplined for failure to follow Montgomery's instructions to remain at work after his scheduled shift. (Braxton Dep. at 154.)

Montgomery used the radio to direct Braxton's work. (Id. at 166-67.) The radio broadcast throughout the entire working area, as well as to other cranemen and supervisors carrying portable radios. (Id.) Montgomery and Braxton were having some sort of conversation over the radio, when Braxton responded to Montgomery by stating "Come on liar, I mean Sam." (Id.) Montgomery asked Braxton what he said and, Braxton repeated the statement over the radio, again stating "Come on liar, I mean Sam." (Id.) Montgomery immediately instructed Braxton to exit the crane and leave the area. (Id. at 167.)

As a result of the incident, Braxton initially was suspended for insubordination. (Id. at 147-48; Exh. 6 to Braxton Dep.)   The grounds for the discipline were Braxton's failure to move a ladle as instructed by Montgomery,[7] offensive language toward Montgomery and violation of the March 14, 2008 Last Chance Agreement. (Braxton Dep. at 148-49; Kuykendall Dep. at 34-35; Olvey Dep. at 71-72, 113-14.) After a hearing on June 24, 2008, Braxton's suspension was converted to a discharge on June 25, 2008.  (Braxton Dep. at 173-74; Exh. to Watson Decl. at US000093.) The Union filed a grievance on Braxton's behalf, but subsequently withdrew it.  (Id.)

Braxton filed a Charge of Discrimination with the EEOC against U.S. Steel on September 16, 2008 alleging that his discharge was because of his race.[8]  (Exh. A to Doc. #26.)  On June 17, 2010, he received his Notice of Right to Sue from the EEOC, and he filed the instant Complaint on September 14, 2010. (Doc. #1 and Exh. A to Doc. #1)

## IV. Applicable Substantive Law and Analysis

The analysis of the plaintiff's claims will be determined not only by the nature of the allegations but also by the quality of the evidence offered in support of those

---

[7]  Braxton testified that he did not hear Montgomery instruct him to move a ladle. (Braxton Dep. at 167.)

[8]  The EEOC Charge also alleges that he was terminated in retaliation for having complained of his employer's discriminatory practices.  (Exh. A to Doc. #26.)  Braxton does not allege retaliation in the Complaint.

claims.  See Standard, 161 F.3d at 1330 (noting that "[t]he analytical framework and burden of production var[y] depending on the method of proof chosen").  In general, a plaintiff may attempt to establish a claim of illegal employment discrimination through the use of direct evidence, circumstantial (indirect) evidence, or statistics. See id.; see also Schoenfeld v. Babbitt, 168 F.3d 1257, 1266 (11th Cir. 1999) (recognizing the availability of either direct or circumstantial evidence). A plaintiff's ability to proceed through the use of circumstantial evidence of discrimination is necessarily important because direct proof of discrimination is uncommon.  See Combs v. Plantation Patterns, 106 F.3d 1519, 1537 (11th Cir. 1997); Grigsby v. Reynolds Metals Co., 821 F.2d 590, 595 (11th Cir. 1987).

Here, it is undisputed that Plaintiff has presented only circumstantial evidence of racial discrimination and retaliation.  "In evaluating [discrimination] claims supported by circumstantial evidence, [the courts of this circuit] use the now-familiar framework established by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)."  Combs, 106 F.3d at 1527.  Under the McDonnell Douglas and Burdine framework, the plaintiff first has the burden of establishing a prima facie case of discrimination, which creates a rebuttable presumption that the employer

12

acted illegally.  See id. at 1527-28.  The methods of presenting a prima facie case, as well as the exact elements of the case, are not fixed; rather they are flexible and depend to a large degree upon the facts of the particular situation.  See, e.g., Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1185 (11th Cir. 1984); Lincoln v. Board of Regents of Univ. Sys., 697 F.2d 928, 937 (11th Cir. 1983).  In general, a plaintiff establishes a prima facie case of disparate treatment employment discrimination by showing that he or she was a qualified member of a protected class and was subjected to an adverse employment action but that otherwise similarly situated employees outside the plaintiff's class were treated dissimilarly.[9]  See McDonnell Douglas, 411 U.S. at 802 (hiring); Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997) (discipline); see also Nix, 738 F.2d at 1185 (discipline); Pittman v. Hattiesburg Mun. Separate Sch. Dist., 644 F.2d 1071, 1074 (5th Cir. 1981) (wages).

Once the plaintiff has shown a prima facie case and, thereby, has raised the presumption of discrimination, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions.[10]  See Rojas, 285 F.3d

---

[9]  See also McDonnell Douglas, 411 U.S. at 802 n.13 ("The facts necessary will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not applicable in every respect in different factual situations.").

[10]  See Chapman, 229 F.3d at 1032 (A subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which the employer based its subjective opinion.).

at 1342; Combs, 106 F.3d at 1528. The employer "need not persuade the court that it was actually motivated by the proffered reasons." Burdine, 450 U.S. at 254-55; see Chapman, 229 F.3d at 1024. If the employer satisfies that burden by articulating one or more such reasons, then the presumption of discrimination falls and the burden of production again shifts to the plaintiff to offer evidence sufficient for a reasonable jury to conclude that the employer's supposedly legitimate reason is merely a pretext for illegal discrimination.[11]

Despite this shifting of the burden of production between the plaintiff and the defendant under the McDonnell Douglas and Burdine framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Burdine, 450 U.S. at 253. Given that the ultimate burden of persuasion always lies with the employee, a plaintiff may prevail on an employment discrimination claim and may also defeat a summary judgement either by proving that intentional discrimination did indeed motivate the defendant or by producing sufficient evidence to allow a rational trier of fact to disbelieve the employer's proffered legitimate reasons, thus permitting but not compelling the trier of fact to make a finding of illegal discrimination. See

---

[11] If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it. Simply quarreling with that reason is not sufficient. Chapman, 229 F.3d at 1030.

14

Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147-48 (2000) (pointing out that the production of the necessary sufficient evidence by plaintiff will not always prevent the employer from prevailing on a Rule 50 motion and suggesting that the strength of plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other properly considered evidence that supports the employer's case are among other factors to take into account in evaluating a Rule 50 motion);[12] St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993); Abel v. Dubberly, 210 F.3d 1334, 1339 (11th Cir. 2000); Alexander v. Fulton County, 207 F.3d 1303, 1336 (11th Cir. 2000); Combs, 106 F.3d at 1529-38 (interpreting Hicks and the post-Hicks case law); Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 920-21 (11th Cir. 1993).

## A.   Prima Facie Case of Discrimination in Termination

To establish a prima facie case of disparate treatment in termination, Plaintiff must show that: (1) he is a member of a protected class; (2) he was subjected to an adverse employment decision; (3) he was qualified to do his job; and (4) he was replaced by someone outside his protected class. Cuddeback v. Fla. Bd. of Education, 381 F.3d 1230, 1235 (11th Cir. 2004); Benson v. Tocco, Inc., 113 F.3d 1203, 1207-08

---

[12] The court in Chapman modified the statement in Combs contrary to this holding in Reeves after noting that the standard for granting summary judgment mirrors the standard for judgment as a matter of law.  See Chapman, 229 F.3d at 1025, n.11.

(11th Cir. 1997).   Defendant U.S. Steel concedes that Braxton is a member of a

protected class and that he was subjected to an adverse employment decision.   (Doc.

#15 at 11.)   Defendant disputes the third and fourth elements of the prima facie case.

The court discusses these disputes below.

### 1.   Qualified to Do the Job

U.S. Steel's argument in regard to the qualifications element of the prima facie

case is misplaced.   U.S. Steel argues in terms of whether Braxton satisfied U.S.

Steel's legitimate expectations (doc. #15 at 12-13), but that is not the standard used

by the Eleventh Circuit.   Past rulings in the Eleventh Circuit, as well as other Circuits,

hold that satisfaction of an employer's expectations is not a requisite element of a

prima facie employment discrimination case.   See Walker v. Mortham, 158 F.3d

1177, 1192-93 (11th Cir. 1998); Vessels v. Atlanta Indep. School Sys., 408 F.3d 763,

769 (11th Cir. 2005); accord Fowle v. C & C Cola, 868 F.2d 59, 65 (3d Cir. 1989);

Medina v. Ramsey Steel Co., 238 F.3d 674, 681 (5th Cir. 2001); Wexler v. White's

Fine Furniture, 317 F.3d 564, 575 (6th Cir. 2003) (en banc); Jayasinghe v. Bethlehem

Steel Corp., 760 F.2d 132, 135 (7th Cir. 1985); Legrand v. Trustees of Univ. of Ark.,

821 F.2d 478, 481 (8th Cir. 1987); Lynn v. Regents of Univ. of Cal., 656 F.2d 1337,

1344–45 (9th Cir. 1981); Burrus v. United Tel. Co., 683 F.2d 339, 342 (10th Cir.

1982).   Instead, only objective job qualifications are considered in evaluating the

16

plaintiff's prima facie case, and the question of whether an employee meets the employer's expectations is left to the later stage of the McDonnell Douglas analysis. Vessells, 408 F.3d at 769. "Because the issue of [Braxton's] job performance is intertwined with the issue of whether [her] termination was pretextual," the court will not examine her job performance until the pretext analysis. Holifield v. Reno, 115 F.3d 1555, 1562 n.3 (11th Cir. 1997) (citing Anderson v. Baxter Healthcare Corp., 13 F.3d 1120, 1124 n.4 (7th Cir. 1994); Weldon v. Kraft, Inc., 896 F.2d 793, 798 (3rd Cir. 1990)).

Braxton held the job of hot metal crane operator for over two  years, and there is no evidence before the court that he was not objectively qualified to do this job. Therefore, the court concludes that Braxton was qualified to do his job for purposes of the prima facie case of discrimination.

## 2.  Replaced by an Individual Outside her Protected Class

As to the fourth element, both Defendant and Plaintiff confuse the elements of the prima facie case, although the court admits that the Eleventh Circuit often does the same thing.  In a termination case like the one here, the plaintiff does not have to establish the existence of similarly situated comparators.  "A prima facie case of discrimination in termination is established where the plaintiff proves by a preponderance of the evidence that he or she is a member of a protected class, was

17

qualified for the position held, and was discharged and replaced by a person outside of the protected class or was discharged while a person outside of the class with equal or lesser qualifications was retained." Walker v. Mortham, 158 F.3d 1177, 1187 n.21 (11th Cir. 1998) (emphasis in original) (citing Lee v. Russell County Bd. of Educ., 684 F.2d 769, 773 (11th Cir.1982)).   The disjunctive nature of the prima facie standard has been overlooked by many courts for whatever reason and has caused much confusion in the precedent.  See Walker, 158 F.3d at 1187 n.21.  However, the earliest cases which articulate the prima facie elements in termination cases do not support an element of relative qualifications if the employer has filled the plaintiff's position with a person outside the plaintiff's protected class.  See Lee, 684 F.2d at 773; Jackson v. City of Killeen, 654 F.2d 1181, 1183-84 & n.3 (5th Cir. 1981); Rhode v. K.O. Steel Castings, Inc., 649 F.2d 317, 322 (5th Cir. 1981).  Because the court is bound to follow the "earliest case rule," see Walker, 158 F.3d at 1188-89, the court does not require the Plaintiff to establish the similarly situated element in this termination case.

Instead, Braxton must simply establish that he was replaced by someone outside his protected class.  See Cuddeback, 381 F.3d at 1235.  Unfortunately, there is no evidence before the court as to who replaced Braxton after his termination.  The court, however, cannot fully fault the parties for this oversight, however.   As

explained above, the case law in the Eleventh Circuit is anything but clear regarding the fourth element of the prima facie case and repeatedly requires the similarly situated showing, which was discussed at length by the parties. Therefore, the court assumes without deciding that Braxton can meet this fourth element of the prima facie case and moves on to U.S. Steel's legitimate, nondiscriminatory reason for his termination and pretext.

**B.  Legitimate, Nondiscriminatory Reason for Termination and Pretext**

Although Braxton successfully established a prima facie case of disparate treatment race discrimination (assuming that he meets the fourth element), his claim nevertheless fails because Defendant has successfully rebutted any inference of discrimination, and Braxton cannot show that the articulated reason for his termination was a pretext for discrimination.  See Holifield, 115 F.3d at 1564-65. Defendant states that Braxton was terminated "for repeated misconduct and his violation of the second of two Last Chance Agreements.  Again and again, Mr. Braxton refused to follow the directives of his supervisors and was abusive toward them and willfully disobedient of their directives."  (Doc. #15 at 15.)  Courts have consistently held that misconduct in the workplace is a legitimate, nondiscriminatory reason to terminate an employee.  Therefore, Defendant has met its burden of articulation, the presumption of discrimination is destroyed, (assuming one was

created in the first place), and the burden shifts back to Braxton to show by a preponderance of the evidence that race discrimination motivated the decision to terminate him.  See Sierminski v. Transouth Fin. Corp., 216 F.3d 945, 950 (11th Cir. 2000).

Pretext is established when a plaintiff "present[s] concrete evidence in the form of specific facts" showing that the defendant's proffered reason was pretextual. Bryant v. Jones, 575 F.3d 1281, 1308 (11th Cir. 2009).  "[The plaintiff] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."    Jackson v. State of Ala. State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir.2005) (quotation marks omitted); see also Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 771 (11th Cir.2005) (A plaintiff's evidence of pretext "must reveal such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence.").  A plaintiff does not demonstrate pretext by showing that the defendant had a mistaken belief about the facts that formed the basis for the alleged nondiscriminatory reason. Woodard v. Fanboy, L.L.C., 298 F.3d 1261, 1265 (11th Cir. 2002).  Instead, the plaintiff must present evidence that the defendant did not honestly believe the facts

20

on which it based its nondiscriminatory reason.  Id.  Further, when the employer provides a reason "that might motivate a reasonable employer, an employee must meet that reason head on and rebut it . . . ." Chapman, 229 F.3d at 1030.  Conclusory allegations and assertions of discrimination are insufficient. See Bryant, 575 F.3d at 1308.

Plaintiff makes two overall arguments regarding pretext.  First, throughout his entire brief, Braxton continually disputes his disciplinary record with U.S. Steel.  He quarrels with the reasons stated by U.S. Steel for each disciplinary issue, contending that either (1) the incidents were not his fault or (2) the discipline imposed should have been for some lesser offense.  His argument as to why he was terminated ignores the progressive discipline applied by U.S. Steel, which is at the heart of his termination, especially in light of the Last Chance Agreement.  In essence, his argument really boils down to Braxton quarreling with the reasons stated by U.S. Steel  for his repeated disciplinary problems and his ultimate termination.

Braxton's self-serving assertions about his disciplinary history, however, do not aid in his burden of establishing that he was discriminated against because of his race.  Regardless of what really happened, it is undisputed that Braxton was repeatedly disciplined and was subject to a Last Chance Agreement that specifically dealt with his attitude toward supervisors.  To show that the proffered reason for his

21

termination was pretextual, Plaintiff must show that Defendants based the decision to discipline Plaintiff on an unreasonable belief that he behaved in the manner alleged.   See, e.g., Silvera v. Orange County Sch. Bd., 244 F.3d 1253, 1261 (11th Cir. 2001), cert. denied, 534 U.S. 976 (2001) (pretext means more than a mistake by the employer; actions taken based on a mistaken, non-discriminatory belief do not violate Title VII); Lee v. GTE Fla., Inc., 226 F.3d 1249, 1253 (11th Cir. 2000), cert. denied, 532 U.S. 958 (2001) ("A plaintiff must show not merely that the defendant's employment decisions were mistaken, but that they were in fact motivated by sex."); Equal Employment Opportunity Comm'n v. Total Sys. Servs., Inc., 221 F.3d 1171 (11th Cir. 2000) (plaintiff could be properly discharged on defendant's good faith belief that she lied in an internal investigation); Alexander v. Fulton County, Ga., 207 F.3d 1303, 1339 (11th Cir. 2000), reh'g denied, 218 F.3d 749 (11th Cir. 2000) ("a plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by race."); Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir.1991) (court's pretext inquiry is properly limited to whether the decision-makers believed the employee had engaged in conduct for which he was terminated and if so whether this belief was the reason for the discharge, not whether plaintiff was actually guilty of the conduct); Conner v. Fort Gordon Bus Co., 761 F.2d 1495, 1501 (11th Cir.1985) (employer's belief, honest but

22

mistaken, may nonetheless provide legitimate reason for discharge).  The court is not in the position to analyze "whether employment decisions are prudent or fair. Instead, [the] sole concern is whether unlawful discriminatory animus motivates a challenged employment decision." <u>Damon v. Fleming Supermarkets of Fla., Inc.</u>, 196 F.3d 1354, 1361 (11th Cir. 1999).  Despite Plaintiff's conclusory assertions to the contrary, he has offered no evidence which contradicts the evidence before this court that Defendants terminated him for a legitimate, nondiscriminatory reason.  Therefore, this argument fails to satisfy Braxton's burden of establishing pretext.

Second, Plaintiff uses comparator evidence to establish pretext.  If a plaintiff attempts to show pretext by comparing his own treatment to the employer's treatment of similarly situated employees outside of his class, his comparators must be "similarly situated in all relevant aspects." <u>Holifield</u>, 115 F.3d at 1562.  Employees are "similarly situated" if they are involved in the same or similar conduct and are disciplined in different ways.  <u>Rioux v. City of Atlanta</u>, 520 F.3d 1269, 1280 (11th Cir. 2008) (quotation omitted). Further, the Eleventh Circuit has held that a "comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." <u>Wilson v. B/E Aerospace, Inc.</u>, 376 F.3d 1079, 1091 (11th Cir. 2004).

Braxton identifies the following six individuals as suitable comparators: (1) Terry Allen; (2) Shane Matthews; (3) Ron Hicks; (4) Chad Holmes; (5) Jared Zellinski; and (6) John Hicks.  None of Braxton's alleged comparators rises to the standard required by the Eleventh Circuit.   The court discusses each alleged comparator separately below.

### 1. Terry Allen

The court is perplexed at Plaintiff's contention that Terry Allen is a suitable comparator.  Plaintiff's spends more time on Allen than any other alleged comparator, other than Jared Zellinski, who is discussed supra.  In fact, Plaintiff's brief discusses Allen and the noose that he displayed in the Power House in November 2008, five months after Braxton was terminated, on three separate occasions.  (Doc. #20 at 2-3, 11, 14.) The court believes that Plaintiff's introduction of Allen was only for its "shock value" and amounts to a not-so-veiled attempt to introduce otherwise irrelevant evidence.  There is absolutely nothing similar about Allen and Braxton. Allen worked in a different area and in a different position than Braxton; they had different supervisors.   Allen's conduct occurred five months after Braxton's termination.   The conduct the two men were accused of are is in no way

comparable.[13]  See Rioux, 520 F.3d at 1280 (holding  that employees are "similarly

situated" if they are involved in the same or similar conduct and are disciplined in

different ways.)

### 2.  Shane Matthews

Plaintiff contends that "Shane Matthews is a white union employee working

in the QBOP and called Ryan Underwood, a black supervisor, a nigger and was not

discharged.  He received a couple of days off."  (Doc. #20 at 3; see also id. at 11.)

This information is insufficient to establish Matthews as a suitable comparator.

Plaintiff does not provide any information regarding the timing of this alleged

comment, Matthews disciplinary history, or the decisionmaker who allegedly gave

Matthews "a couple of days off."   Notably, the two references to Matthews in

Plaintiff's brief absolutely no citation to the record whatsoever, and the court was

forced to scour the entire record itself to find any evidence that would support this

statement.   Even though the court found a small bit of evidence in Braxton's

deposition (see Braxton Dep. at 90-92), it was in the form of hearsay evidence.  The

---

[13] Plaintiff mentions in passing Allen's discipline for insubordination while working in
the QBOP department and his five-day suspension.  (Doc. #20 at 11.)  This allegation does not
contain any citation to the record.  Defendant, however, acknowledges the incident and does
provide some citation for the court.  (Doc. #23 at 7.)  The incident apparently occurred in January
2004.  However, at that time, Allen did not have any history of insubordination and he was not
subject to a Last Chance Agreement like Braxton.  (Olvey Dep. at 129-30.)  As such, Allen is not
a suitable comparator for purposes of establishing pretext.  See Holifield, 115 F.3d at 1562.

Eleventh Circuit requires a plaintiff to "present concrete evidence in the form of specific facts" showing that the defendant's proffered reason was pretextual. <u>Bryant v. Jones</u>, 575 F.3d 1281, 1308 (11th Cir. 2009).  Braxton's evidence does not even come close to meeting this standard.  Even accepting the evidence as true, it does not establish that Matthews and Braxton were "similarly situated in all relevant aspects." <u>Holifield</u>, 115 F.3d at 1562.

### 3. Ron Hicks

Plaintiff also points to Ron Hicks as a suitable comparator for purposes of establishing pretext.  (Doc. #20 at 4, 11.)  Hicks, a white employee, worked in the QBOP department as a crane operator.  (Kuykendall Dep. at 51-53.)  In May 2005, Hicks got in a physical altercation with a black employee and used profanity, but he was not discharged.  (<u>Id.</u> at 52-53.)  Instead, Hicks was suspended[14] without pay, subject to discharge and entered into a Last Chance Agreement with U.S. Steel.

Hicks is not a suitable comparator to Braxton for two basic reasons.  First, there is no evidence before the court as to Hicks' past disciplinary history.  The evidence shows just this one incident.   Braxton, on the other hand, was already subject to a Second Last Chance Agreement when he was terminated.  The Eleventh Circuit has

---

[14] There is no evidence as to how long Hicks was suspended, although the Last Chance Agreement seems to indicate that it was for 3 or 4 days.  (Exh. to Kuykendall Dep.)

repeatedly held that employees are not suitable comparators when they have different disciplinary histories than the plaintiff.  Cooper v. Southern Co., 390 F.3d 695, 741 (11th Cir. 2004), *overruled on other grounds*, Ash v. Tyson Foods, Inc., 546 U.S. 454, 457 (2006); Jones v. Bessemer Carraway Med. Cnt., 137 F.3d 1306, 1313 (11th Cir. 1998)*, superseded in other part by* 151 F.3d 1321 (11th Cir. 1998).   Second, the incident with Hicks was with another employee and did not involve insubordination.  See Rioux, 520 F.3d at 1280 (holding  that employees are "similarly situated" if they are involved in the same or similar conduct and are disciplined in different ways.) As such, the court cannot conclude that Hicks and Braxton were "similarly situated in all relevant aspects."  Holifield, 115 F.3d at 1562.

### 4.  Chad Holmes

Chad Holmes, a white employee, worked as a Utilityman in the QBOP area of the plant. (Braxton Dep. at 67-68.)  Holmes was suspended for absenteeism on four separate occasions -  in October 2007, May 2008[15], March & September 2010.  (See Def.'s Exh. E.)   Holmes also received a one-day suspension for unsafe operation of a bobcat, resulting in damage to equipment in March 2008, and a three-day suspension for poor workmanship in April 2009.  (See id. at USS00429 and

---

[15] This suspension for absenteeism was converted to a discharge, but Holmes was later allowed to return to work after he filed a grievance and a settlement was reached between U.S. Steel and the union.  (Def.'s Exh. E at USS00428, US00441.)

USS00434.)   None of these suspensions are similar in any way to Braxton's suspensions.

However, in April 2007, Holmes was disciplined for failure to follow his supervisor's instructions and for leaving the plant without permission.  (See id. at USS00436, USS00442.)  Holmes was suspended for five days, and the suspension was affirmed after a hearing.[16]  (Id.)  Although this incident and suspension are very similar to Braxton's, they are not similar enough to meet the standard required by the Eleventh Circuit.  The two men had different supervisors.  Additionally, Holmes did not have the disciplinary history[17] and was not subject to a last chance agreement at the time of this suspension, like Braxton.   See Cooper v. Southern Co., 390 F.3d at 741 (finding employees inappropriate comparators when they, unlike plaintiff, had no record of disciplinary problems); Jones, 137 F.3d at 1313(individuals lacking disciplinary and performance issues of plaintiff were inappropriate comparators); Stephens v. Bd. of Trustees of Auburn Univ., 774 F.Supp2d 1202, 1211 (M.D. Ala. 2011).  As such, the court cannot conclude that Holmes and Braxton were "similarly

---

[16] Plaintiff's brief states that Holmes was suspended for fourteen days, that the suspension was later converted to a discharge, but that the discharge was revoked.  (Doc. #20 at 4.)  The evidence, however, shows that Holmes was suspended for five days due to this incident.  The fourteen-day suspension and discharge which was revoked actually deal with an incident in May 2008 for failure to work as scheduled and failure to report off.  (Def.'s Exh. E at 441.)

[17] The court notes that all of Holmes' discipline occurred after this incident, except for one discipline for absenteeism.

28

situated in all relevant aspects" as required by the Eleventh Circuit.  Holifield, 115

F.3d at 1562.

### 5.  Jared Zellinski

Plaintiff also contends that Jared Zellinski is a suitable comparator.  (Doc. #20

at 7-8, 11-12, 13.)  Zellinski, a white employee, worked as a crane operator in the

QBOP department, just like Plaintiff.  (Braxton Dep. at 58.)  Plaintiff contends that

Zellinski had a crane accident "that cost over a million dollars,"[18] and he was not

suspended, but only disqualified from operating a crane.  (Id. at 49, 58-62; Doc. #20

at 7.)  Much like all the previous alleged comparators, the incident with Zellinski is

not similar in type to the incidents Braxton was involved with and resulted in

discipline and, ultimately, his termination.  Employees are "similarly situated" if they

are involved in the same or similar conduct and are disciplined in different ways.

Rioux , 520 F.3d at 1280 (emphasis added).  Regardless of the extent of the damage,

damage caused in a crane accident is not similar to insubordination or violating a Last

Chance Agreement.  Additionally, there is no evidence in the record that Zellinski had

any sort of disciplinary history prior to the crane accident.  See Cooper, 390 F.3d at

---

[18] As Defendant points out, there is no evidence in the record that the damage caused by
Zellinski cost "more than a million dollars" other than Braxton's unsupported testimony.  Olvey,
who actually investigated the incident did not recall such a large expense being involved.  (Olvey
Dep. at 137-39.)

741. As such, the court cannot conclude that Zellinski and Braxton were "similarly situated in all relevant aspects" as required by the Eleventh Circuit. <u>Holifield</u>, 115 F.3d at 1562.

### 6. John Hicks

The last person Braxton alleges are a potential comparator  is John Hicks. (Doc. #20 at 7-8.)  According to Braxton, Hicks is a white employee "who has been disqualified five (5) times from various jobs in the QBOP, and has never had to enter into a last chance agreement.  He is still employed at U.S. Steel."  (Doc. #20 at 7-8.) These sentences in Braxton's brief contain no citation to the record, and after scouring the record itself, the court found only the Plaintiff's  testimony regarding Hick, which does not even support the statements.  Specifically, Plaintiff testified as follows regarding Hicks, in full:

> John Hicks as well had at least seven accidents while he's
> been employed at U.S. Steel. He's been disqualified at least
> five times on every job he's done, and he has – he only had
> to serve one last chance and he's still there.

(Braxton Dep. at 49.)

These two sentences in Plaintiff's deposition testimony do not give enough information to establish that Hicks and Braxton were "similarly situated in all relevant aspects" as required by the Eleventh Circuit.  <u>Holifield</u>, 115 F.3d at 1562.

First, the Eleventh Circuit requires a plaintiff to "present concrete evidence in the form of specific facts" showing that the defendant's proffered reason was pretextual. Bryant v. Jones, 575 F.3d 1281, 1308 (11th Cir. 2009). Braxton's self-serving testimony  does not come close to meeting this standard.  Second, even if the evidence was acceptable, the reasons are the same as the reasons for the other alleged comparators: there is no evidence of Hicks' disciplinary history; there is no evidence that Hicks' disciplinary history included acts of insubordination after he signed a last chance agreement; there is no evidence of Hicks's supervisors and decisionmakers regarding the alleged seven accidents.  Simply put, the "quantity and quality of the comparator's misconduct [must] be nearly identical [to the plaintiff's] to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999).  Here, Braxton's comparator evidence does not come close to meeting this standard.  As such, the evidence does not rise to the level needed to establish pretext.

In conclusion, to prevail on Defendant's summary judgement motion, Plaintiff must come forward with evidence sufficient for a reasonable jury to conclude that the challenged decision was indeed motivated by intentional discrimination or that Defendant's proffered legitimate reasons were merely a pretext for illegal discrimination.  Plaintiff has not carried his burden of production.  At best, he is only

31

quarreling with Defendant's articulated reasons, which is not sufficient.  <u>See</u> <u>Chapman</u>, 229 F.3d at 1030.  The Eleventh Circuit has repeatedly stated that it does not sit as a personnel board, judging the decisions of employers. <u>Rowell v. Bellsouth</u> <u>Corp.</u>, 433 F.3d 794, 798 (11th Cir. 2005) ("It is by now axiomatic that we cannot second-guess the business decisions of employers.").   That is essentially what Braxton asks this court to do, and it refuses. Therefore, Defendant's claim of discrimination fails as a matter of law, and Defendant is entitled to summary judgment as to Plaintiff's claim of discrimination.

## V.  Conclusion

The court finds that no material issues of fact remain and that Defendant U.S. Steel Corporation is entitled to judgment as a matter of law as to all claims asserted by Plaintiff. A separate final order will be entered.

**DONE** this the  27th   day of March, 2012.


_____

SENIOR UNITED STATES DISTRICT JUDGE